RECEIVED
NOV 13 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DM DEPUTY CLERK

FILED
NOV 13 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DG DEPUTY

Blake Floyd Cozzens
522 Cedarwood Terrace
Cedar City, Utah 84720
Telephone: (435) 592-6395
Email: blake.cozzens@gmail.com
Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| BLAKE FLOYD COZZENS,<br>Plaintiff,<br><br>v.<br><br>ELON R. MUSK,<br>Defendant. | Civil Action No.: 1:26CV03186ABD<br><br>COMPLAINT UNDER 15 U.S.C. § 78t-1<br><br>JURY TRIAL DEMANDED |

## I. NATURE OF ACTION

1. Plaintiff Blake Floyd Cozzens brings an individual action against Elon R. Musk under Section 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1, arising from Musk's November and December 2022 sales of Tesla, Inc. common stock while he allegedly possessed material, nonpublic information about Tesla's then-current vehicle demand, orders, production, deliveries, and related business conditions. Plaintiff claims relief only for any of his purchases that qualify under the statute, rather than for all historical Tesla trading losses.

2. Musk's SEC Form 4, filed December 14, 2022, reports sales of 3,205,000 Tesla common shares on December 12, 11,920,000 on December 13, and 6,870,000 on December 14, 2022: 21,995,000 shares across those three dates. SEC accession 0000899243-22-038522.

3. Plaintiff's Ally Invest/Apex Clearing 2022 Form 1099-B identifies 1,175 Tesla December 16, 2022 $182.50 call contracts acquired and disposed of December 12, 2022, and 845 such call contracts acquired December 12 and disposed of December 13. Other documented December 13 and 14 option purchases are described in Schedule A. These dated acquisitions correspond to the period of Musk's Form 4 sales; their qualification as securities of the same class is a legal question addressed below.

## II. PARTIES

4. Plaintiff is an adult natural person residing in Iron County, Utah. He was a customer of Ally Invest during the 2022 transactions, and separately traded Tesla securities through additional brokerages in other periods.

5. Defendant Elon R. Musk was, at relevant times, Tesla's chief executive officer, director, controlling or substantial shareholder, and reporting person for SEC Forms 4 documenting the transactions challenged in this action. The December 14, 2022 Form 4 lists Musk care of Tesla, Inc., 1 Tesla Road, Austin, Texas 78725.

6. Tesla, Inc. is identified as the public issuer of TSLA securities and is not named as a defendant in this Section 20A claim merely on the basis of Musk's personal sales. This individual claim seeks relief against the alleged selling insider.

## III. JURISDICTION AND VENUE

7. This Court has exclusive subject-matter jurisdiction under Section 27 of the Exchange Act, 15 U.S.C. § 78aa(a), and 28 U.S.C. § 1331, because this claim arises under Section 20A of the Exchange Act.

8. Plaintiff alleges venue under 15 U.S.C. § 78aa(a). Musk conducted Tesla executive activity in and transacted business through Austin, Texas, including in connection with Tesla's headquarters, operations and securities disclosures. The operative Form 4 gave his address care of Tesla in Austin. The Court may exercise personal jurisdiction consistently with the Exchange Act's nationwide-service provision and constitutional requirements.

## IV. SPECIFIC 2022 INSIDER TRANSACTIONS

9. On November 8, 2022, Musk filed Forms 4 reporting Tesla common-stock sales on November 4, 7, and 8, 2022. See SEC accessions 0000899243-22-035393 and 0000899243-22-035394. Plaintiff pleads the November transactions as context and does not claim that the subsequently identified November 9 call purchase was necessarily same-day trading.

10. On December 12–14, 2022, Musk disposed of 21,995,000 shares, as stated in paragraph 2. The associated SEC filing was accepted after the market close on December 14, 2022. The precise date on which the public learned of each transaction matters to a separate market-misrepresentation theory, but Section 20A addresses qualifying opposite-side contemporaneous transactions where the insider's trading itself was unlawful.

11. On October 19, 2022, Tesla had publicly released its third-quarter results and management discussed vehicle demand, delivery logistics, and year-end expectations. Tesla's management publicly cautioned that delivery growth could fall short of the company's previous 50% annual growth trajectory. Those disclosures did not necessarily reveal Tesla's complete subsequently developing December order, demand, inventory, production, or delivery experience.

12. On January 2, 2023, Tesla announced 405,278 fourth-quarter vehicle deliveries and 439,701 vehicles produced. Tesla publicly reported year-over-year delivery growth of approximately 40% for 2022. See Tesla Investor Relations, "Vehicle Production & Deliveries" (Jan. 2, 2023). These figures were released after Musk's December sales.

## V. FACTUAL BASIS FOR UNDERLYING INSIDER-TRADING VIOLATION

13. As chief executive officer and a director, Musk had responsibilities giving him access to Tesla's internal production, orders, pricing, demand, inventory and delivery reports. This organizational access, standing alone, is not proof he possessed particular nonpublic facts at the time of his sales.

14. In Perry v. Musk, Delaware Court of Chancery C.A. No. 2024-0560, a shareholder brought a derivative suit alleging that Musk sold Tesla shares in November and December 2022 with knowledge of deteriorating nonpublic operating conditions. That complaint reported investigation of Tesla books and records obtained under Delaware law. Plaintiff relies on the existence and factual detail of those pleaded allegations as a public investigative basis, not as an adjudication that insider trading occurred.

15. The derivative complaint specifically alleged that Musk possessed then-current adverse internal operational information before public delivery figures were announced, and that he disposed of approximately $7.5 billion worth of shares during November and December 2022. Musk's public Forms 4 corroborate that substantial sales occurred, but do not by themselves prove an Exchange Act violation.

16. Plaintiff alleges on information and belief, based on Musk's chief-executive access, the timing and scale of the sales, and the particularized allegations described in the public derivative complaint, that Musk was aware of material adverse Tesla information not then publicly disclosed when he made at least certain December 2022 stock sales. Plaintiff alleges that trading on that information while owing duties to Tesla and its shareholders violated Section 10(b) and Rule 10b-5 under the classical theory of insider trading.

17. Plaintiff acknowledges that Twitter acquisition financing was a reported reason for portions of Musk's 2022 sales and that Tesla had publicly warned of growth and logistical challenges. The complaint alleges that those possible explanations do not independently resolve whether Musk possessed and traded while aware of additional material, undisclosed current operational information.

## VI. PLAINTIFF'S CONTEMPORANEOUS TRANSACTIONS

18. Plaintiff's 2022 Ally/Apex Form 1099-B identifies 2,020 December 16, 2022 $182.50 Tesla call contracts acquired on December 12, 2022: (a) 1,175 acquired and disposed of that day, and (b) 845 acquired December 12 and disposed of December 13. The tax statement lists combined proceeds of $390,389.80 and original basis of $635,641.02 for those two lots, a $245,251.22 difference before wash-sale adjustments. The document reports $249,442.09 in associated disallowed wash-sale losses, illustrating why tax-recognized figures cannot automatically equal civil damages.

19. The same Form 1099-B identifies 500 December 16, 2022 $140 Tesla put contracts acquired and disposed of December 13, and 1,000 December 16, 2022 $140 put contracts acquired and disposed of December 14, plus five December 23, 2022 $190 call contracts acquired December 14 and disposed of December 15. These are separately listed because purchase date, put/call direction, class and damages require individualized legal treatment.

20. The Ally Maxit report shows $4,472,261.72 aggregate realized gains and $5,473,103.34 aggregate realized losses across its reported TSLA common-share and option position groups for May 2017–April 2023, yielding $1,000,841.62 net realized loss. These figures encompass unrelated dates and strategies. Plaintiff does not allege that the entire net loss is Section 20A damages.

21. Plaintiff also reviewed J.P. Morgan 2022 options activity, Fidelity 2022 tax records, and 2024 Interactive Brokers and Robinhood TSLA records. The 2024 records concern later public statements and transactions and are not aggregated into the present 2022 Section 20A claim. Schedule A reproduces the 2022 Ally/Apex transaction-level tax-lot details while indicating which values reflect tax rather than economic damages.

## VII. COUNT I — SECTION 20A CONTEMPORANEOUS INSIDER TRADING (MUSK)

22. Plaintiff incorporates the preceding factual allegations. Section 20A(a), 15 U.S.C. § 78t-1(a), authorizes a private cause of action against a person who unlawfully trades while possessing material, nonpublic information, in favor of an opposite-side contemporaneous purchaser or seller of securities of the same class.

23. Musk was an insider and sold Tesla common stock on December 12, 13, and 14, 2022. Plaintiff purchased exchange-traded Tesla calls on December 12, and additional TSLA options on December 13 and 14, as identified by the Ally/Apex statement. This claim is directed to the December 2022 contemporaneous purchases to the extent publicly traded TSLA options qualify as same-class securities under Section 20A.

24. Plaintiff alleges an underlying Section 10(b)/Rule 10b-5 violation on the factual basis set out in Section V. The statute requires more than temporal coincidence and a later stock price decline. See 15 U.S.C. § 78t-1; In re Enron Corp. Securities, Derivative & ERISA Litig., 258 F. Supp. 2d 576 (S.D. Tex. 2003).

25. The December 12 call acquisitions were the same trading day as Musk's December 12 stock sales. Contemporaneous trading need not entail direct trade execution between plaintiff and defendant. The same-class issue concerning common stock and exchange-traded stock options is disputed, and Plaintiff contends that the contractual linkage and interdependent market support inclusion on an appropriate factual record. See Clay v. Riverwood Int'l Corp., 157 F.3d 1259 (11th Cir. 1998) (discussing distinctions between stock appreciation rights and publicly traded options).

26. This claim is brought before five years have elapsed since the December 2022 insider transactions, as specified in Section 20A(b)(4). Plaintiff does not assert that Section 20A's period revives an otherwise time-barred independent Rule 10b-5 misrepresentation claim. See Johnson v. Aljian, 490 F.3d 778 (9th Cir. 2007) (persuasive authority on Section 20A's independent limitations provision).

27. Plaintiff seeks proven statutory damages only for qualifying contemporaneous securities purchases, subject to the limitations, offsets, and profit-gained-or-loss-avoided cap in Section 20A(b). He requests no punitive damages and makes no claim that gross trading losses themselves establish recoverable damages.

## VIII. RELIEF REQUESTED

**WHEREFORE, Plaintiff asks the Court to:**

Enter judgment in his favor on Count I to the extent he proves a qualifying Section 20A claim;

Award actual damages in an amount established by legally proper trade-specific proof, subject to Section 20A(b) and applicable offsets;

Award taxable costs, post-judgment interest under 28 U.S.C. § 1961, and any prejudgment interest authorized by law;

Grant trial by jury on all issues triable as of right; and

Grant such other relief as the Court finds proper under federal law.

**JURY DEMAND: Plaintiff demands trial by jury on issues triable as of right.**

Dated: October 31, 2026

/s/ Blake Floyd Cozzens

Blake Floyd Cozzens, Plaintiff Pro Se

522 Cedarwood Terrace, Cedar City, Utah 84720

(435) 592-6395 | blake.cozzens@gmail.com

## SCHEDULE A — REPORTED 2022 ALLY/APEX TESLA OPTION TAX LOTS

Source: Apex Clearing consolidated 2022 Form 1099-B for Ally Invest, original report pages identified in source. "Acquired" and "disposed" are tax-lot dates reported by the broker, not intraday execution timestamps. "Wash disallowance" changes tax-reported results; it is not necessarily economic recovery or damages.

Lot A1 — December 16, 2022 TSLA $182.50 CALLS: acquired December 12, 2022; disposed December 12, 2022; 1,175 contracts; 1099 proceeds $267,057.35; original tax basis $396,463.32; wash-sale loss disallowed $133,596.84; adjusted tax P/L +$4,190.87.

Lot A2 — December 16, 2022 TSLA $182.50 CALLS: acquired December 12, 2022; disposed December 13, 2022; 845 contracts; 1099 proceeds $123,332.45; original tax basis $239,177.70; wash-sale loss disallowed $115,845.25; adjusted tax P/L $0.

Lot A3 — December 16, 2022 TSLA $182.50 CALLS: acquisition reported as "Various"; disposed December 14, 2022; 1,900 contracts; 1099 proceeds $31,160.58; original tax basis $638,020.67; wash-sale loss disallowed $295,386.34; adjusted tax P/L −$311,473.75. The exact acquisition date for this lot is not established by that 1099-B.

Lot A4 — December 16, 2022 TSLA $140 PUTS: acquired and disposed December 13, 2022; 500 contracts; 1099 proceeds $15,739.45; original tax basis $13,759.09; adjusted tax P/L + $1,980.36.

Lot A5 — December 16, 2022 TSLA $140 PUTS: acquired and disposed December 14, 2022; 1,000 contracts; 1099 proceeds $18,479.23; original tax basis $31,726.01; wash-sale loss disallowed $13,246.78; adjusted tax P/L $0.

Lot A6 — December 23, 2022 TSLA $190 CALLS: acquired December 14, 2022; disposed December 15, 2022; 5 contracts; 1099 proceeds $247.39; original tax basis $197.60; adjusted tax P/L +$49.79.

Lot A7 — November 25, 2022 TSLA $190 CALLS: acquired November 9, 2022; disposed November 10, 2022; 400 contracts; 1099 proceeds $327,284.36; original tax basis $227,269.76; adjusted tax P/L +$100,014.60. This lot is presented for chronology and is not alleged to be a December contemporaneous purchase.

The original 2022 Form 1099-B and Maxit report are retained as source documents. Schedule A identifies reported transaction dates but not intraday times, who held the opposite side of any trade, or legally recoverable damages.

## SCHEDULE B — PUBLIC SOURCE IDENTIFICATION

- SEC Form 4 for Musk's December 12–14, 2022 sales: accession 0000899243-22-038522 (filed Dec. 14, 2022).
- SEC Forms 4 for Musk's November 2022 sales: accessions 0000899243-22-035393 and 0000899243-22-035394 (filed Nov. 8, 2022).
- Tesla Investor Relations, Tesla Vehicle Production & Deliveries for Q4 2022 (Jan. 2, 2023), reporting 405,278 deliveries.
- Perry v. Musk, No. 2024-0560 (Del. Ch.), public shareholder derivative complaint (May 30, 2024), quoted here as allegations and not adjudicated facts.